UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
Austin Division

FILED
2006 JAN -6 PM 12: 37
CLERK
WESTERN DISTRICT COURT
OF TEXAS
BY_____

| | |
|---|---|
| WATSON, et al., Plaintiffs, | ) |
| | ) |
| v. | ) CASE NO. A-04-CA-691-LY |
| | ) |
| LAW ENFORCEMENT ALLIANCE OF | ) |
| AMERICA, INC., et al., Defendants. | ) |

### DEFENDANT LEAA'S MOTION TO DISMISS

Defendant Law Enforcement Alliance of America, Inc. ("LEAA") moves to dismiss this case under Fed. R. Civ. P. 12(b)(6) and 12(c) because the Complaint fails to plead facts sufficient to state a claim on which relief may be granted and, indeed, negates the asserted claims. The grounds for this motion appear in the attached Memorandum. A proposed form of order also is attached.

Respectfully submitted,

_Christian J Ward_
Gregory S. Coleman
Texas Bar No. 00783855
Christian J. Ward (*pro hac vice*)
Texas Bar No. 24033434
WEIL, GOTSHAL & MANGES LLP
8911 Capital of Texas Hwy., Ste. 1350
Austin, Texas 78759
Tel. 512-349-1930
Fax 512-527-0798

Of counsel:
Thomas W. Kirby (*pro hac vice*)
D.C. Bar No. 915231
Caleb P. Burns (*pro hac vice*)
D.C. Bar No. 474923
WILEY REIN & FIELDING LLP
1776 K St. N.W.
Washington, D.C. 20006
Tel. 202-719-7000
Fax 202-719-7049

38

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
Austin Division

| | |
|---|---|
| WATSON, et al., Plaintiffs, ) | |
| ) | |
| v.                                                ) | CASE NO. A-04-CA-691-LY |
| ) | |
| LAW ENFORCEMENT ALLIANCE OF  ) | |
| AMERICA, INC., et al., Defendants.     ) | |

**DEFENDANT LEAA'S MEMORANDUM SUPPORTING
ITS MOTION TO DISMISS**

Defendant Law Enforcement Alliance of America, Inc. ("LEAA") moves to dismiss this case under Fed. R. Civ. P. 12(b)(6) and 12(c) because the Second Amended Complaint ("Complaint") fails to plead facts sufficient to state a claim on which relief may be granted. To the contrary, the Complaint's few asserted "facts" negate the asserted claims and add up only to protected free speech and association lying at the very heart of the First Amendment to the United States Constitution.

I. **THE COMPLAINT MUST BE DISMISSED IF ITS WELL-PLEADED FACTS – AS OPPOSED TO CONCLUSORY ASSERTIONS – FAIL TO SUPPORT THE ESSENTIAL ELEMENTS OF THE PROFFERED CLAIMS FOR RECOVERY.**

"[T]o avoid dismissal for failure to state a claim, [Plaintiffs] must plead specific facts, not mere conclusory allegations . . . . Moreover, 'conclusory allegations and unwarranted deductions of fact are not admitted as true'" and cannot prevent dismissal. *Bolden v. Greenpoint Mortgage Funding, Inc.*, No. Civ.A. 304CV0379P, 2004 WL 2297086, at *4 (N.D. Tex. Oct. 13, 2004) (internal citations omitted). The <u>facts</u> alleged must support "every material point necessary to sustain a recovery," either directly or by fair inference. *Campbell v. City of San Antonio*, 43 F.3d

973, 975 (5th Cir. 1995) (quoting 3 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1216 at 156-159).[1]

The factually sparse Complaint alleges that: (i) LEAA is a Virginia corporation; (ii) it sought and accepted money from corporate donors to use for "political advertising;" (iii) it spent corporate funds on a television ad (Compl. Ex. A) and a mailer (Compl. Ex. B) with the intent of opposing Plaintiffs' campaigns for Texas elective office; and (iv) it did not file any Texas campaign finance reports.[2] For purposes of this motion, LEAA will assume those facts to be true, although they actually are inaccurate and misleading.

But Plaintiffs' asserted "facts," even if true, would not state a valid claim. Plaintiffs' theories require, *inter alia*, that LEAA spent money on regulated "campaign expenditures" or "campaign contributions" and that LEAA be a "campaign treasurer" as the Texas Election Code defines those terms of art. In fact, Exhibits A and B to the Complaint clearly show that the challenged LEAA speech was not an expenditure or contribution, and LEAA is not alleged to be, and obviously is not, a campaign treasurer. Thus, the Complaint does not state a claim for recovery, as we now show.

---

[1]   On November 1, 2004, LEAA filed its Answer And Defenses to the original "Petition" that had been removed to this Court. LEAA has not answered the Second Amended Complaint. If it had, then this Motion To Dismiss would be a Motion For Judgment On The Pleadings pursuant to Fed. R. Civ. P. 12(c). A motion to dismiss for failure to state a claim is governed by the same familiar standards whether it is made before answer under Rule 12(b)(6) or after answer under Rule 12(c). *See Goins v. Louisiana*, No. Civ. A. 04-1159, 2004 WL 2694899, at *1 (E.D. La. Nov. 22, 2004) (collecting authority). To avoid needless procedural uncertainty, this motion relies on both rules.

[2]   Mere legal and conclusory assertions, such as the passing reference to "coordination," are not well-pleaded facts, not taken as true, and do not state a valid claim, as shown in LEAA's Opposition To Plaintiffs' Motion To Remand. Although this Memorandum focuses on the most obvious factual deficiencies, its core position is that the Complaint fails to plead facts sufficient to support any theory of recovery.

II. **BECAUSE NO FACTS ARE PLEADED SHOWING THAT LEAA MADE "CAMPAIGN EXPENDITURES" OR MADE OR ACCEPTED "CAMPAIGN CONTRIBUTIONS," PLAINTIFFS' FIRST CAUSE OF ACTION UNDER § 253.131 FAILS.**

Plaintiffs' first cause of action alleges that LEAA spent corporate funds on a television ad and mailer (Compl. Exs. A, B) in violation of § 253.094(a), thus giving rise to a civil action under § 253.131 of the Election Code. In some circumstances, § 253.131 allows a candidate to sue any "person who knowingly makes or accepts a <u>campaign contribution</u> or makes a <u>campaign expenditure</u> in violation of this chapter" for a civil penalty of "twice the value of the unlawful contribution or expenditure," plus legal fees.[3] "Campaign expenditure" and "campaign contribution" are terms of art that the code defines to require a transfer of value "<u>in connection with a campaign</u>." § 251.001(3), (7). That "in connection with" standard also has a precise legal meaning that, as we now show, is not met by the facts alleged by Plaintiffs here.

The right of free speech protected by the First Amendment to the United States Constitution applies with full force to corporate speech on public issues. *See Consol. Edison Co. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 530, 533-35 (1980); *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 776-77 (1978). Moreover, restricting spending on public speech restricts speech itself. *See Buckley v. Valeo,* 424 U.S. 1, 39 (1976). Thus, the statutes relied upon by Plaintiffs strike at the heart of the First Amendment. *Id.* This has important consequences for how those statutes are construed, as we discuss below.

    A. <u>Spending For Speech Is Not "In Connection With" An Election Unless The Speech Uses Explicit Words To Expressly Advocate Election Or Defeat.</u>

When the State uses a content standard to regulate core speech, and particularly where (as here) a violation may lead to criminal or civil penalties, the First Amendment requires the

---

[3] All emphasis herein is added unless otherwise noted.

3

standard to be <u>extremely</u> precise, objective, and tailored. *Buckley*, 424 U.S. at 40-41, 77; *Fed. Election Comm'n v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238, 248-49 (1986) ("*MCFL*"); *Chamber of Commerce v. Moore*, 288 F.3d 187, 192-95 (5th Cir. 2002); *Osterberg v. Peca*, 12 S.W.3d 31, 50-51 (Tex. 2000).[4] Much more than the "fair notice" required of ordinary criminal statutes must be provided. *Buckley*, 424 U.S. at 41. This is because, fear of possible penalties may cause speakers to "steer far wider of the unlawful zone ... than if the boundaries of the forbidden areas were clearly marked," thus chilling speech that the Constitution values highly and the statute does not actually forbid. *Id.* (collecting authority). Precise, objective, and tailored standards thus are essential to encourage free and unfettered speech. *Id.*

The "in connection with" standard that Texas employs to define campaign expenditures and contributions is very similar (and in once instance identical) to language that federal law uses to define federally regulated expenditures and contributions. *See Osterberg*, 12 S.W.3d at 50-51. The U.S. Supreme Court subjected the federal provisions to a stringent narrowing construction to avoid invalidating them under the First Amendment for vagueness and overbreadth. *See id.* (citing *Buckley*, 424 U.S. at 44, 77-80); *see also MCFL*, 479 U.S. at 248-49. Likewise, "a number of state courts have narrowly construed their statutory definitions of campaign expenditures or contributions to avoid the vagueness or overbreadth problems that *Buckley* identified." *Osterberg*, 12 S.W.3d at 50.

The Texas Supreme Court adopted for Texas law the same narrowing construction that *Buckley* and *MCFL* imposed on its federal counterparts, concluding that "[l]ike the federal

---

[4] *Buckley, MCFL, Chamber of Commerce,* and *Osterberg* all hold that restrictions on spending for public speech restricts speech itself, and that reporting and similar requirements attached to such spending for core speech trigger stringent First Amendment scrutiny, including requirements of great precision, objectivity, and tailoring. By contrast, regulation of other types of speech that are not protected by the First Amendment or that lie at the periphery of its concerns (*e.g.*, obscenity and near-obscenity) need not be so precise or tailored since the speech that may be lost due to "steering clear" is deemed to have less constitutional value.

provision's language that *Buckley* construed, the phrase, 'in connection with a campaign for elective office,' is vague." *Id.* at 51. In so holding, it approved and relied upon a ruling by the Texas Ethics Commission that dealt directly with corporate spending. *Id.* (citing Op. Tex. Ethics Comm'n No. 198 (1994)).[5] Under *Osterberg*'s narrowing construction, money spent for speech is subject to campaign finance regulation by Texas authorities only if it "in express terms advocate[s] the election or defeat of a clearly identified candidate," using "explicit words" such as "vote for," "elect," "support," etc. *Buckley*, 424 U.S. at 43-44 & n.52; *MCFL*, 476 U.S. at 249.[6]

*Buckley* freely acknowledged that its express advocacy standard easily could be circumvented but held that:

> So long as persons and groups eschew expenditures that in express terms advocate the election or defeat of a clearly identified candidate, they are free to spend as much as they want to promote the candidate and his views.

424 U.S. at 45; *see also Fed. Election Comm'n v. McConnell*, 540 U.S. 93, 193 (2003) (noting "our longstanding recognition" that advertisers can "easily evade the line by eschewing the use of magic words").

Of course, a legislature is not required to retain the *Buckley* standard if it develops and adequately supports an equally precise, objective, and tailored substitute. *See McConnell*, 540

---

[5] Opinion No. 198 addressed "[w]ether a corporation may make expenditures to communicate various types of information." It ruled that "a corporation is prohibited ... only if those communications 'expressly advocate'" as defined in *MCFL* and *Buckley*. Thus, corporations may spend for "[c]ommunications conveying candidates' positions and voting records, poll results, and endorsements by third parties" so long as they avoid "'expressly advocating' the election or defeat of a candidate, as the term has been interpreted by the Supreme Court." *Osterberg* held that the Opinion deserved "great weight" and relied on it to impose the "express advocacy" construction. 12 S.W.3d at 51.

[6] Because the speech in *Osterberg* named the candidate and explicitly exhorted viewers to "VOTE FOR HIS OPPONENT," it was held to constitute "express advocacy" subject to regulation. 12 S.W.3d at 52.

5

U.S. at 189-90, 193-94 (upholding a precise new federal standard that "raises none of the vagueness concerns that drove ... *Buckley*," is "objectively determinable," and has a scope justified by "the record in this litigation"). But in the absence of some other legislation, a state may not seek to achieve greater coverage by watering down the express advocacy standard. Thus, the Fifth Circuit flatly rejected Mississippi's argument that explicit "magic words" should not be required to find express advocacy where an electoral message was entirely clear and unmistakable, holding that such a standard violated the First Amendment. *Chamber of Commerce*, 288 F.3d at 192-95, 198-99 (noting that the holding was not intuitive but was compelled by core First Amendment requirements).

Texas did not provide some other standard, but instead embraced the *Buckley* test. Rather than steering clear of possible illegality, LEAA was entitled to say what it chose, even with corporate funds, so long as its speech did not employ explicit words to expressly advocate electoral activity.[7]

### B. LEAA's television ad and mailer do not contain explicit words expressly advocating electoral action.

The LEAA television ad and mailer (Compl. Exs. A, B) do not contain explicit words that expressly advocate the election or defeat of anyone. Thus, their undisputed contents conclusively negate the "in connection with" element that is essential to the first cause of action.

The storyboard of the television ad (Compl. Ex. A) makes contrasting statements about Kirk Watson and Greg Abbott. However, the ad contains absolutely no explicit language calling

---

[7]   Courts have since continued to recognize that in the absence of a clear and objective standard, they may apply the express advocacy standard to vague and overbroad statutes where such a narrowing construction is appropriate. *See Anderson v. Spear*, 356 F.3d 651, 664-65 (6th Cir. 2004) ("while the *McConnell* Court disavowed the theory that 'the *First Amendment* erects a rigid barrier between express advocacy and so-called issue advocacy,' it nonetheless left intact the ability of courts to make distinctions between express advocacy and issue advocacy, where such distinctions are necessary to cure vagueness and overbreadth in statutes . . ."); *Am. Civil Liberties Union v. Heller*, 378 F.3d 979, 985 (9th Cir. 2004) (quoting same).

for any electoral action. In fact, the ad does not identify either individual as a candidate nor does it make a single reference to an election.[8] The viewer is simply informed of LEAA's views and told that he or she can "learn more" by accessing the LEAA website. Plaintiffs may assert that a political message is plainly implied, but that is beside the point. As *Chamber of Commerce* makes crystal clear, implied messages are not explicit words of express advocacy.[9]

The same is true of LEAA's mailer (Compl. Ex. B). It discusses the record of candidate Mike Head and asks whether the reader would feel safe allowing Mr. Head to write the laws of Texas. It mentions that he is a candidate, but it does not explicitly and expressly advocate a vote for or against Mr. Head.[10] Thus, it falls on the unregulated side of the bright line drawn by *Osterberg* and *Buckley*.

Because the Complaint affirmatively shows that LEAA did not employ explicit words of express advocacy, and no other <u>facts</u> are alleged to satisfy the "in connection with" standard, the Complaint fails to state a claim on its first cause of action.

### III. BECAUSE LEAA IS NOT A CANDIDATE OR CAMPAIGN TREASURER, PLAINTIFFS' SECOND CAUSE OF ACTION UNDER § 254.231 MUST FAIL.

Plaintiffs' second purported cause of action – for "failure to report" supposed campaign expenditures and contributions – relies on § 254.231 of the Election Code, which provides:

---

[8] To be clear, even if such references occurred, they would not amount to explicit advocacy of a particular vote. The absence of such references in this ad is noted merely to stress how far the ad is from constituting express advocacy.

[9] In *Chamber of Commerce*, the court concluded that the phrases "Lenore Prather--A fair and independent voice for Mississippi" and "Judge Keith Starrett--a common sense justice" did not constitute express advocacy. 288 F.3d at 198.

[10] Similarly, the Court of Appeals for the Fourth Circuit concluded that the following text did not entail express advocacy: "Bill Clinton's vision for America includes job quotas for homosexuals, giving homosexuals special civil rights, allowing homosexuals in the armed forces. Al Gore supports homosexual couples' adopting children and becoming foster parents. Is this your vision for a better America?" *Fed. Election Comm'n v. Christian Action Network, Inc.*, 110 F.3d 1049, 1050 (4th Cir. 1997).

7

> A <u>candidate or campaign treasurer or assistant campaign treasurer</u> of a political committee who fails to report in whole or in part <u>a campaign contribution or campaign expenditure</u> as required by this chapter is liable for damages as provided by this section (emphasis added).

By its plain language, § 254.231 imposes liability only for failing to report "a campaign contribution or campaign expenditure." As just demonstrated in Section II, the Complaint alleges no facts showing that LEAA's spending was a campaign expenditure or contribution because the television ad and mailer contain no express advocacy. For this reason alone, this claim fails.

Moreover, § 254.231 is a narrow provision that imposes potential liability only upon "a candidate or campaign treasurer or assistant campaign treasurer." The same is true of the underlying reporting requirements that the Complaint invokes. Section 254.151 specifies contents of "each report by a <u>campaign treasurer</u>." Section 254.161 requires that, in some circumstances, notice of certain activities must be given "as provided by Section 254.128," which, in turn, specifies that the "<u>campaign treasurer</u> shall deliver written notice." The remaining provision cited by the Complaint, § 254.031, merely specifies the contents of reports otherwise required. This explicit focus on the personal obligation of a specified person is confirmed by the Texas Ethics Commission Rules which provide that "the individual named as a committee's campaign treasurer is legally responsible for filing all reports." § 20.405(c); *cf.* 70 Fed. Reg. 3, 5 (Jan. 3, 2005) (the Federal Election Commission will hold treasurers of federal political committees personally liable for violations of these legal obligations "impose[d] specifically on committee treasures").

Because the campaign treasurer is the focus of reporting obligations and liability, the Election Code contains elaborate provisions dealing with the appointment of a campaign treasurer. *E.g.*, §§ 252.001 - .003, .009 - .013. The Code contemplates that a campaign treasurer

8

will be a natural person who has knowingly accepted the obligation of fulfilling the reporting obligations of an entity known to be subject to campaign finance regulation. The Complaint does not allege, or even hint, that LEAA is a campaign treasurer. To the contrary, the Court may take judicial notice that LEAA never has been appointed as anyone's treasurer. For this reason as well, the Complaint does not and cannot state a claim for recovery under its second cause of action.

### IV.   CONCLUSION.

LEAA's Motion should be granted and the Complaint should be dismissed in its entirety. Moreover, because Exhibits A and B demonstrate that LEAA made no regulated expenditures or contributions and this is the third pleading Plaintiffs have filed, the dismissal should be with prejudice.

Respectfully submitted,

*/s/ Christian J. Ward*

Gregory S. Coleman
Texas Bar No. 00783855
Christian J. Ward (*pro hac vice*)
Texas Bar No. 24033434
WEIL, GOTSHAL & MANGES LLP
8911 Capital of Texas Hwy., Ste. 1350
Austin, Texas 78759
Tel. 512-349-1930
Fax 512-527-0798

Of counsel:

Thomas W. Kirby (*pro hac vice*)
D.C. Bar No. 915231
Caleb P. Burns (*pro hac vice*)
D.C. Bar No. 474923
WILEY REIN & FIELDING LLP
1776 K St. N.W.
Washington, D.C. 20006
Tel. 202-719-7000
Fax  202-719-7049

## CERTIFICATE OF SERVICE

I certify that I served a copy of Defendant LEAA's Motion to Dismiss on each attorney of record listed below on the 6th day of January 2006 in accordance with the Federal Rules of Civil Procedure.

*Christian J. Ward*
Christian J. Ward

Doug W. Ray
Randall B. Wood
RAY, WOOD & BONILLA, L.L.P.
2700 Bee Caves Road #200
Austin, Texas 78746
*Counsel for plaintiffs Kirk Watson and Mike Head*

Daniel W. Bishop, II
BISHOP LONDON BROPHY & DODDS, P.C.
106 East 6th Street, Ste. 700
Austin, Texas 78701
*Counsel for plaintiff Kirk Watson*

Courtesy copy to:

Michael Thompson, Jr.
WRIGHT & GREENHILL, P.C.
221 West 6th Street, Ste. 1800
P.O. Box 2166
Austin, Texas 78768
*Counsel for dismissed defendant John Colyandro*